# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

**DELANA LYNN TURLEY,**

    **Plaintiff,**

v.                                **CASE NO. 2:17-cv-01915**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No.11) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 12).

### Background

### Previous Application

On December 12, 2011, Delana Lynn Turley, Claimant, filed a Title II application for disability insurance benefits, alleging disability beginning November 30, 2009. The application was denied initially on May 11, 2012, and upon reconsideration on June 19, 2012. On July 9, 2012, Claimant filed a request for a hearing before an Administrative Law Judge. A hearing was held on July 25, 2013. On October 2, 2013, the Administrative Law Judge denied Claimant's decision. Claimant did not appeal the ALJ's decision.

### Current Applications

On November 15, 2013, Claimant applied for disability and disability insurance benefits (DIB) under Title II. Claimant alleges that her disability began on November 30, 2009. Her DIB

application was denied initially on March 22, 2014, and upon consideration on August 6, 2014 (Tr. at 125- 139). On September 10, 2014, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ).

On October 16, 2014, Claimant applied for supplemental security income (SSI) under Title XVI. Claimant alleged that her disability began on November 30, 2009. The SSI application was escalated to the hearing level to be adjudicated with her DIB claim (Tr. at 186-191).

On May 20, 2016, an ALJ presided over a video hearing from Kansas City, Missouri. Claimant appeared from Charleston, West Virginia. On July 25, 2016, the ALJ issued a decision stating that he found no basis upon which to reopen Claimant's prior DIB Title II application (Tr. at 20). The ALJ stated that he considered Social Security Ruling 91-5p[1] and found that it does not apply to Claimant's DIB application. Therefore, the ALJ held "[T]his application will only consider the time period from October 3, 2013, forward, or one day subsequent to the date of the last Administrative Law Judge decision (20 CFR 404.957(c)(1))". (*Id.*) The ALJ found that "the previous determination on the Title II application is final and binding from December 12, 2011." (*Id.*) The ALJ found that based on Claimant's application for DIB filed on November 15, 2013, Claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act (Tr. at 32).

In regards to Claimant's SSI application, the ALJ stated "I note the claimant's subsequent Title XVI application for supplemental security income on October 16, 2014, which was escalated to the hearing level." On July 25, 2016, the ALJ found that based on Claimant's application for SSI filed on October 16, 2014, Claimant is not disabled under section 1614(a)(3)(A) of the Social

---

[1] SSR 91-5p can be used to extend a claimant's deadline to appeal an adverse decision based on what the Social Security Administration (SSA) considers "good cause." According to the SSA, a tardy request for review will not automatically result in a dismissal of the appeal; if the claimant can present evidence that mental incapacity prevented him or her from understanding the review process, that claimant's appeal will be given appropriate consideration.

Security Act. (*Id.*)  After receiving an extension of time, Claimant requested review by the Appeals Council (AC) of the ALJ's decision (Tr. at 15).  On January 20, 2017, the AC denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner.  Claimant filed the instant action seeking judicial review and requesting remand of the ALJ's decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2017).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix

4

> 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant meets the insured status requirements of the Social Security Act through December 31, 2014 (Tr. at 23). The ALJ found that Claimant has not engaged in substantial gainful activity since October 3, 2013, one day subsequent to the prior ALJ's decision. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of: chronic lumbosacral strain, with left radicular symptoms; fibromyalgia; and hyperlipidemia. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 25). The ALJ then found that Claimant has a residual functional capacity to perform a limited range of medium work, except she can: occasionally lift and carry fifty pounds; frequently lift and carry twenty-five pounds; sit, stand and walk for six hours in an eight hour day; frequently climb ramps, stairs, balance, stoop, kneel or crouch; occasionally climb ladders, ropes or scaffolds and crawl; with occasional exposure to unprotected heights; moving mechanical parts; dust, odors, fumes and pulmonary irritants; and occasional exposure to extreme cold and heat. (*Id.*)

At the fifth inquiry of the sequential evaluation, the ALJ stated that Claimant has the following past relevant work: a security guard, which was light level, semi-skilled work; sales person in a shoe department, which was light level, semi-skilled work; and store laborer, which

was medium level, unskilled work. The ALJ held that "These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity" (Tr. at 30).

The ALJ held that "Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform" (Tr. at 30). The ALJ found that Claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (Tr. at 30-31). At the hearing, the VE testified that a hypothetical individual with the limitations provided by the ALJ, could perform the jobs previously referenced as a security guard and sales person in a shoe department (Tr. at 31). The ALJ held that Claimant could perform jobs such as light retail sales, which is light level, semi-skilled work (Tr. at 31).

Additionally, the ALJ made alternative findings to step five of the sequential evaluation process based on the VE's testimony. The ALJ directed the VE to consider a hypothetical individual who is claimant's age and has the same education and transferable work skills as claimant, who could perform a limited range of medium level work. The ALJ told the VE to add the following mental limitations: carry out instructions and simple routine tasks; and limited to simple, work-related decisions. The ALJ asked the VE if the aforementioned hypothetical individual could perform any of Claimant's past jobs. The VE testified that such an individual could perform work as a store laborer, which was medium level, unskilled work. (*Id.*) The ALJ held that "[A]lthough the claimant's additional limitations do not allow the claimant to perform the full range of medium work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate (Tr. at 31-32).

Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on November 27, 1956. On the date of the hearing, Claimant was 59 years old (Tr. at 44). She graduated from high school in 1975 (Tr. at 45). Claimant completed a computer class at "a West Virginia State extension" (Tr. at 289). She has 2 children. On the date of the hearing, Claimant lived with a friend. She has a driver's license (Tr. at 46).

## Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

Discussion

Step Three of Sequential Evaluation

The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. at 25). The ALJ's step three discussion consists of the following:

> The undersigned has reviewed all the Listings of Impairments, particularly the listings in sections 1.00 (musculoskeletal system), 4.00 (cardiovascular system), 5.00 (digestive system), 9.00 (endocrine system) and 11.00 (neurological disorders). The claimant has severe impairments, but the claimant's impairments, combined or separately, did not meet or equal any impairment described in the Listing of Impairments at any time relevant to this decision (Tr. at 25).

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

The ALJ's step three evaluation is lacking the information necessary to inform a reviewing court of the specific impairments the ALJ considered and the criteria for those impairments. The Listing of Impairments describes, for each major body system, impairments considered severe enough to prevent an individual from doing any gainful activity. Each "section" pertains to a different body system. Each "section" contains "impairments" in that particular body system and includes specific criteria for establishing an "impairment." For example, Listing Section 1.00 is regarding the musculoskeletal system. Under Section 1.00, there are seven different listed impairments, each with their own specific criteria. Section 1.00 includes the following listed impairments: 1.02 Major dysfunction of a joint; 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; 1.04 Disorders of the spine; 1.05 Amputation; 1.06 Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones; 1.07 Fracture of an upper extremity; and 1.08 Soft tissue injury.

The ALJ's statement that Listing Section 1.00 was considered, could be referring to any of the 8 musculoskeletal system impairments. The ALJ did not specify which Listing(s) were considered, nor did the ALJ discuss the criteria for each listing. A reviewing court is unable to know which listed impairments were considered and how the ALJ determined whether the criteria was met for that particular listed impairment.

## Conclusion

Accordingly, the ALJ failed to identify or explain the impairments that were considered. Further, the ALJ's decision is not supported by substantial evidence. As such, the undersigned respectfully recommends that the District Judge grant Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10) and remand this matter for further consideration and explanation under step 3 of the sequential evaluation. This Court makes no recommendation as to

Claimant's remaining arguments as the issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10) to the extent Plaintiff seeks remand, **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: January 16, 2018

_____
Dwane L. Tinsley
United States Magistrate Judge