UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DELANA LYNN TURLEY,

        Plaintiff,

v.                              Civil Action No. 2:17-cv-01915

NANCY A. BERRYHILL, Acting
Commissioner Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        Pending are the objections to the magistrate judge's

Proposed Findings and Recommendation ("PF&R"), filed by

defendant Nancy A. Berryhill (the "Commissioner") on January 19,

2018.


### I. Procedural History


        The plaintiff, Delana Lynn Turley ("Claimant"),

instituted this action in this court on March 17, 2017, pursuant

to 42 U.S.C. §§ 405(g), 1383(c)(3) (2016).  Claimant seeks

judicial review of the Commissioner's final determination

denying her two applications for disability insurance benefits

and supplemental security income.

        In accordance with 28 U.S.C. § 613(b)(1)(B) and the

standing order in this district, this action was referred to

United States Magistrate Judge Dwane L. Tinsley for findings of fact and recommendations for disposition. Claimant and the Commissioner have filed cross motions for judgment on the pleadings.

On January 16, 2018, the magistrate judge filed his PF&R, finding that "[t]he ALJ's step three evaluation is lacking the information necessary to inform a reviewing court of the specific impairments the [administrative law judge ("ALJ")] considered and the criteria for those impairments." (PF&R 10.) Step three, which is part of a mandatory five-step analysis conducted by the Commissioner, involves comparing a claimant's impairments to listed impairments in the social security regulations. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2017). Thus, the magistrate judge recommends that the court

> grant [Claimant's] Memorandum in Support of Judgment on the Pleadings to the extent [Claimant] seeks remand, deny the [Commissioner's] Brief in Support of [the Commissioner's] decision, reverse the final decision of the Commissioner, and remand this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and dismiss this matter from the court's docket.

(PF&R 11 (emphases and citations omitted).)

The Commissioner filed objections to the PF&R on January 19, 2018. The Commissioner argues that the ALJ's step three conclusion is amply supported by record evidence and that

2

remand is thus unwarranted.  (See Obj. 7.)  Claimant responded

on January 30, 2018, urging the court to adopt the magistrate

judge's analysis.  (See Resp. 1.)


II. Standard of Review


The court reviews de novo those portions of the

magistrate judge's PF&R to which objections are timely filed.

28 U.S.C. § 636(b)(1)(B); see Orpiano v. Johnson, 687 F.2d 44,

47 (4th Cir. 1982); see also 20 C.F.R. § 416.927(e)(1) (ultimate

decision regarding disability determinations rests with the

Commissioner).  On the other hand, the standard for review of

the Commissioner's decision is rather deferential to the

Commissioner, for "a reviewing court must 'uphold the

determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial

evidence.'"  Brown Comm'r Soc. Sec. Admin., 873 F.3d 251, 267

(4th Cir. 2017) (quoting Preston v. Heckler, 769 F.2d 988, 990

(4th Cir. 1985)); Oppenheim v. Finch, 495 F.2d 396, 397 (4th

Cir. 1974) (court must scrutinize the record as a whole to

determine whether the conclusions reached are supported by

substantial evidence); see also 42 U.S.C. § 405(g).  Substantial

evidence is that which "a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402

U.S. 389, 401 (1971) (internal citations omitted); accord Brown, 873 F.3d at 267.

"In reviewing for substantial evidence, [a district court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is by definition more than "a mere scintilla," Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996), but "may be somewhat less than a preponderance," Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

### III. Discussion

20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) set forth "[t]he five-step sequential evaluation process" that the Commissioner applies when deciding whether a claimant is disabled. As explained by the United States Court of Appeals for the Fourth Circuit,

> [t]he Commissioner asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a "listed" impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can

> perform any other work in the national economy.
> <u>Hancock v. Astrue</u>, 667 F.3d 470, 472-73 (4th Cir.
> 2012). The claimant has the burden of production and
> proof at Steps 1-4. <u>Id.</u>

<u>Radford v. Colvin</u>, 734 F.3d 288, 290-91 (4th Cir. 2013) (full

citation added). At issue in the present action is step three.

    At "step three, the ALJ decides whether the claimant

has an impairment that meets or equals an impairment listed in

the regulations for being severe enough to preclude a person

from doing any gainful activity." <u>Brown</u>, 873 F.3d at 254. The

listings of specific impairments are found in Appendix 1 to

Subpart P of the regulations. <u>See</u> 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet a listing, a

claimant "must meet all of the specified medical criteria. An

impairment that manifests only some of those criteria, no matter

how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S.

521, 530 (1990). To equal a listing, a claimant "must present

medical findings equal in severity to all the criteria for the

one most similar listed impairment." <u>Id.</u> at 531. A claimant

who meets or equals a step three listing is conclusively

disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii);

<u>accord</u> <u>Radford</u>, 734 F.3d at 291 (citing <u>Bowen v. City of New</u>

<u>York</u>, 476 U.S. 467, 471 (1986) and <u>McNunis v. Califano</u>, 605 F.2d

743, 744 (4th Cir. 1979)).

The ALJ determined that Claimant suffered from the following severe impairments: "chronic lumbosacral strain, with left radicular symptoms; fibromyalgia[;] and hyperlipidemia." (Tr. 23.) At step three of the five-step sequential analysis, the ALJ concluded that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" the regulations. (Id. 25.) The entirety of the ALJ's step three analysis is as follows:

> The undersigned has reviewed all the Listing of Impairments, particularly the listings in sections 1.00 (musculoskeletal system), 4.00 (cardiovascular system), 5.00 (digestive system), 9.00 (endocrine system), and 11.00 (neurological disorders). The claimant has severe impairments, but the claimant's impairments, combined or separately, did not meet or equal any impairment described in the Listing of Impairments at any time relevant to this decision.

(Id.)

The magistrate judge found the ALJ's step three analysis lacking, concluding that "[a] reviewing court is unable to know which listed impairments were considered and how the ALJ determined whether the criteria was met for that particular listing." (PF&R 10.) The magistrate judge relied upon Radford, which he interpreted as "stat[ing] that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." (Id. 9 (citing Radford, 734 F.3d 288).)

6

Thus, because "[t]he ALJ did not specify which Listing(s) were considered[] nor . . . discuss the criteria for each listing," the magistrate judge held that it could not engage in meaningful review of the ALJ's decision.  (Id. 10.)

The Commissioner disagrees with the magistrate judge's reading of Radford.  In her view, "Radford does not require categorical remands for detailed Listing discussions in all cases, regardless of the facts."  (Obj. 5.)  Instead, the Commissioner insists that "the rule in Radford is not categorical, but rather fact-dependent," such that factual findings elsewhere in an ALJ's decision can negate a claimant's satisfaction of the listings.  (See id. 4-7.)  Claimant responds in agreement with the magistrate judge's decision.  (See Resp. 3-5.)

The court recently confronted similar arguments in Marcum v. Berryhill, No. 16-2297, 2017 WL 1095068 (S.D. W. Va. Mar. 23, 2017) (Copenhaver, Jr., J.).  In that case, after reviewing case law of both the Fourth Circuit and the district courts, the court concluded that an ALJ's "failure to include a pertinent discussion of the evidence at step three of the analysis" is of no moment if the whole of the ALJ's decision provides substantial evidence to support the step three determination.  See id. at *3-4 (citing Radford, 734 F.3d 288;

Fox v. Colvin, 632 F. App'x 750 (4th Cir. 2015); Kiernan v.
Astrue, No. 3:12-cv-459, 2013 WL 2323125 (E.D. Va. May 28,
2013); McDaniel v. Colvin, No. 2:14-cv-28157, 2016 WL 1271509
(S.D. W. Va. Mar. 31, 2016) (Johnston, J.); Six v. Colvin, No.
3:15-cv-14377, 2016 WL 7040850 (S.D. W. Va. Dec. 1, 2016)
(Chambers, J.)).

        Indeed, in Radford, the Fourth Circuit ultimately
concluded that the ALJ's cursory step three analysis precluded
meaningful review "[g]iven the depth and ambivalence of the
medical record."  734 F.3d at 296.  A necessary corollary to
that holding is that in some instances an ALJ's cursory step
three analysis nonetheless enables meaningful review.  For
example, in Ezzell v. Berryhill, the Fourth Circuit instructed
that "[w]hen there is 'ample evidence in the record to support a
determination' that the claimant's impairment meets or equals
one of the listed impairments, the ALJ must identify 'the
relevant listed impairments' and compare 'each of the listed
criteria to the evidence of [the claimant's] symptoms.'"  688 F.
App'x 199, 200 (4th Cir. 2017) (quoting Cook v. Heckler, 783
F.2d 1168, 1172-73 (4th Cir. 1986)) (second alteration in
original).  Again, the corollary is that an in-depth step three
analysis is unnecessary in some instances, particularly when
there is not ample evidence supporting a step three listing.

The court has not located any authority, nor have the parties here cited any authority, compelling it to reevaluate its conclusion.  See, e.g., Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (finding that the ALJ's cursory step three analysis was supported by the thorough examination of the record in subsequent steps); McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (same); Ebison v. Colvin, No. 4:14-CV-135-FL, 2015 WL 5725643, at *4 (E.D.N.C. Sept. 30, 2015) (finding that no step three analysis is required where there is no evidence to support a listing); cf. Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) ("[A]ny error [in an ALJ's decision] is reviewed under the harmless error doctrine.  Thus, if the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." (quotation marks omitted)); McCartney, 28 F. App'x at 279 (finding that an ALJ need review medical evidence only once in a decision).

Thus, the court will proceed according to the analysis that it previously set forth in Marcum:

> The court will examine the ALJ's decision in this case and determine whether the explanations and discussion necessary to support the pertinent listing requirements are contained within the ALJ's decision itself.  If the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed.

2017 WL 1095068, at *4.

As earlier noted, the ALJ provided only a cursory analysis in step three, concluding that "the claimant's impairments, combined or separately, did not meet or equal any impairment described in the Listing of Impairments at any time relevant to this discussion." (Tr. 25.) At steps two and four, however, the ALJ developed a comprehensive summary of the evidence that plainly supports the step three conclusion that Claimant does not meet or equal any of the referenced listings.

The ALJ described Claimant's testimony at the hearing, during which she detailed her alleged symptoms. (See id. 26.) Claimant claimed that she suffered debilitating emotional, mental, and physical symptoms that severely limited her personal and social life as well as her ability to work. (See id.) The ALJ also recounted the litany of symptoms that Claimant reported to her healthcare providers and the consultative healthcare providers. (See id. 27-29.) However, the objective medical evidence thoroughly described by the ALJ supports only a few of Claimant's symptoms, and certainly not to the alleged degree. (See id. 27-30.) The court discusses each referenced listing in turn.

A. Listings 1.00 – Musculoskeletal System

Listing 1.00 pertains to the musculoskeletal system.
See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00.  Under this
listing,

> [r]egardless of the cause(s) of a musculoskeletal
> impairment, functional loss . . . is defined as the
> inability to ambulate effectively on a sustained basis
> for any reason . . . or the inability to perform fine
> and gross movements effectively on a sustained basis
> for any reason . . . .  The inability to ambulate
> effectively or the inability to perform fine and gross
> movements effectively must have lasted, or be expected
> to last, for at least 12 months.  For the purposes of
> these criteria, consideration of the ability to
> perform these activities must be from a physical
> standpoint alone.

Id. § 1.00(B)(2)(a).  Thus, to meet or equal Listing 1.00, a
claimant must first establish either "the inability to ambulate
effectively on a sustained basis . . . or the inability to
perform fine and gross movements effectively on a sustained
basis."  Id.

Generally speaking, "[i]nability to ambulate . . .
means an extreme limitation of the ability to walk; i.e., an
impairment(s) that interferes very seriously with the
individual's ability to independently initiate, sustain, or
complete activities."  Id. § 1.00(B)(2)(b)(1) (citation
omitted).  Also generally speaking, "[i]nability to perform fine
and gross movements . . . means an extreme loss of function of

11

both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. § 1.00(B)(2)(c).

In step two of the analysis, the ALJ sufficiently detailed Claimant's musculoskeletal functioning. Dr. Kip Beard, a consultative internist, examined Claimant, and his records indicate that her "lumbar spine showed some mild discomfort with motion testing and small paravertebral tenderness, but no spasm;" "knees revealed some intermittent, very mild patellofemoral crepitus, but without pain, tenderness, redness, warmth, swelling or range of motion limitation;" cervical spine "had some mild discomfort on motion testing . . . with mild tenderness;" "shoulders revealed some mild discomfort on motion testing, and some intermittent AC crepitus, with normal range of motion;" and "hips were without pain or tenderness and normal range of motion." (Tr. 23-24.) Dr. Beard observations also show that Claimant could "stand on one leg alone." (Id. 23.) Further, the ALJ separately noted in step two that despite Claimant's diagnosis of osteopenia, "there is no evidence that this condition has resulted in any fractures of her bones." (Id.)

The court finds that the ALJ's decision as a whole provides substantial evidence supporting his determination that Claimant does not meet an impairment under Listing 1.00. As recounted by the ALJ, Dr. Beard's motion testing of Claimant's musculoskeletal functioning consistently resulted in only mild levels of tenderness and discomfort. (See id. 23-24.) Moreover, Claimant had a normal range of motion and exhibited the ability to stand on only one leg. (See id.) There thus exists no evidence in the ALJ's decision that could be categorized as either an "extreme limitation of the ability to walk" or an "extreme loss of function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 1.00(B)(2)(b)(1), 1.00(B)(2)(c). Consequently, the ALJ's determination that Claimant's symptoms do not meet Listing 1.00 is supported by substantial evidence.

In her response, Claimant takes note that the Commissioner's objections failed to address fibromyalgia, one of Claimant's severe impairments from step two. (Obj. 3.) On this note, Claimant insists that meaningful review is precluded in particular because the ALJ did not explicitly discuss in his decision fibromyalgia. (See id.) Fibromyalgia is "a . . . nonarticular (not affecting joints) rheumatic disease[] . . . characterized by dull and persistent pain, tenderness, and

stiffness of (1) muscles, (2) regions where tendons are inserted into bones, and (3) nearby soft tissues." Fibromyalgia, Attorneys' Dictionary of Medicine. Fibromyalgia manifests itself in "[t]he fibromuscular tissue" at the following sites: "(1) . . . in the back of the skull . . . ; (2) in the neck, shoulders, and chest . . . ; (3) in the lower part of the back . . . ; and (4) in the thighs." Fibromyalgia, sites commonly affected, id. Thus, inasmuch as the ALJ plainly discussed pain and discomfort associated with those regions, which the court describes in its discussion of this listing as well as that of the neurological listing below, the court finds that the ALJ satisfactorily discussed fibromyalgia such that meaningful review of the ALJ's decision is enabled.

B. Listing 4.00 – Cardiovascular System

Listing 4.00 concerns the cardiovascular system. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.00. A cardiovascular impairment is "any disorder that affects the proper functioning of the heart or the circulatory system." Id. § 4.00(A)(1)(a). Such an impairment is characterized by

> one or more of four consequences of heart disease: (i)
> Chronic heart failure or ventricular dysfunction.
> (ii) Discomfort or pain due to myocardial ischemia,
> with or without necrosis of heart muscle. (iii)
> Syncope, or near syncope, due to inadequate cerebral
> perfusion from any cardiac cause, such as obstruction

14

of flow or disturbance in rhythm or conduction
resulting in inadequate cardiac output.  (iv) Central
cyanosis due to right-to-left shunt, reduced oxygen
concentration in the arterial blood, or pulmonary
vascular disease.

Id. § 4.00(A)(1)(b)(i)-(iv).  Hyperlipidemia – Claimant's

cardiovascular impairment, (Tr. 23) – is not a specific

impairment delineated in the cardiovascular listings, see 20

C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 4.02-4.12.  Instead, the

Commissioner "evaluate[s a claimant's] lipoprotein disorder

[hyperlipidemia] by considering its effects [on the claimant]."

Id. § 4.00(H)(7).

        Although the ALJ's step three analysis was merely

cursory, the ALJ's determination finds support in the whole of

his decision.  The ALJ discussed additional notes from Dr.

Beard, concluding that Claimant's "heart examination was

unremarkable."  (Tr. 28.)  In fact, from the ALJ's decision,

Claimant's hyperlipidemia appears to be under control.  The ALJ

described "[p]rogress notes from Iva E. Moore, M.D.,

[C]laimant's treating physician," which indicated that

Claimant's blood pressure and LDL levels were controlled with

medication.  (Id. 27.)  Accordingly, there is no evidence

supporting a positive finding under any of the four Listing 4.00

factors, noted above.  Substantial evidence supports the ALJ's

determination.

## C. Listing 5.00 – Digestive System

The digestive system falls under Listing 5.00. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 5.00. Listing 5.00 contemplates disorders that meet or equal the effects of "gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition." <u>Id.</u> § 5.00(A). The effects must, of course, meet or equal the severity described in the listings. <u>See</u> §§ 5.02, 5.05-5.09.

On this system, the ALJ summarized treatment notes from Dr. Moore and from an examiner at Thomas Memorial Hospital ("Thomas"). Dr. Moore's records indicate that Claimant's gastroesophogeal reflux disorder is controlled by medication. (Tr. 27; <u>see</u> <u>also</u> <u>id.</u> 24.) The Thomas examiner performed "an upper endoscopy with biopsy" and found that Claimant had a "prominent fold at the esophagogastric junction, likely of no clinical significance and minimal gastritis." (<u>Id.</u> 27.) Neither of these records describe symptoms that meet or equal those in Listing 5.00. Thus, the ALJ's decision shows substantial evidence supporting his decision as to Listing 5.00.

D. Listing 9.00 – Endocrine System

Listing 9.00 covers the endocrine system. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 9.00. The listing instructs an ALJ to "evaluate impairments that result from endocrine disorders under the listings for other body systems." Id. § 9.00(B). Thus, an impairment from an endocrine disorder must manifest itself in a way that meets or equals a separate listing. For example, because "pituitary hypofunction affects water and electrolyte balance in the kidney and leads to diabetes insipidus, [an ALJ] evaluate[s] the effects of recurrent dehydration under 6.00." Id. § 9.00(B)(1).

As earlier noted, the ALJ thoroughly described Claimant's record medical evidence, and there is simply no evidence that Claimant's symptoms of endocrine system issues have manifested themselves in a way that meets or equals a separate listing. Indeed, the ALJ recounted from Dr. Moore's notes that Claimant's hypothyroidism was stabilized with replacement therapy. (Tr. 27; see also id. 24.) Consequently, the court finds that the ALJ's Listing 9.00 determination is supported by substantial evidence.

E. Listing 11.00 – Neurological System

Listing 11.00 concerns the neurological system. <u>See</u>
20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00. Under this
listing, "[an ALJ] evaluate[s] epilepsy, amyotrophic lateral
sclerosis, coma or persistent vegetative state (PVS), and
neurological disorders that cause disorganization of motor
function, bulbar and neuromuscular dysfunction, communication
impairment, or a combination of limitations in physical and
mental functioning." <u>Id.</u> § 11.00(A).

To meet or equal the last category of Listing
11.00(A), a claimant must show "a marked limitation in physical
functioning and a marked limitation in at least one of four
areas of mental functioning: Understanding, remembering, or
applying information; interacting with others; concentrating,
persisting, or maintaining pace; or adapting or managing
oneself." <u>Id.</u> § 11.00(G)(1). A marked limitation in physical
functioning "means that, due to the signs and symptoms of your
neurological disorder, you are seriously limited in the ability
to independently initiate, sustain, and complete work-related
physical activities." <u>Id.</u> § 11.00(G)(2)(A). A marked
limitation in mental functioning "means that, due to the signs
and symptoms of your neurological disorder, you are seriously
limited in the ability to function independently, appropriately,

effectively, and on a sustained basis in work settings." Id. §
11.00(G)(2)(b).

The ALJ discussed in his decision Claimant's
neurological system evidence from a number of sources.
According to the ALJ, in June 2014, Dr. Moore found that
Claimant's neurological examination was normal. (Tr. 27.) At
Thomas in June 2015, "a CT of the head . . . was unremarkable,"
and examination showed "no sign of acute neuro deficits or signs
of central vertigo." (Id.) The Thomas examiner concluded that
"[C]laimant had acute dizziness, with probable Meniere's
disease, acute, right ear." (Id.) At Psychiatric Services in
November 2014, an examiner diagnosed Claimant "with major
depressive disorder, recurrent, severe without psychotic
features." (Id.) Over the course of her treatment at
Psychiatric Services through May 2016, Claimant was prescribed
with a number of medications to treat her mental symptoms. (See
id. 27-28.) In March 2016, Dr. Moore "report[ed] that
[Claimant's] mood had been improving with medication." (Id.
27.)

The ALJ also included in his discussion a summary of
the findings of consultative examiners Dr. Beard and Lisa Tate,
M.A. The ALJ found Dr. Beard's records to note that Claimant's
description of her headaches had "'migrainous features,' [but] .

. . . was not classic for that." (Id. 29; see also id. 23.)
Further, Dr. Beard's "neurological examination revealed needle-
like sensation or paresthesias about the plantar aspect of the
left foot, but . . . [without] sensory loss," which "was
reported as unremarkable." (Id. 23, 29.) And despite
Claimant's history of stroke, Dr. Beard found "no clinical
evidence of a stroke." (Id. 29.)

Tate, a psychologist, found Claimant to have "major
depressive disorder, single episode, moderate, chronic." (Id.
29.) Ms. Tate also reported that Claimant's "social functioning
was within normal limits," "concentration was mildly deficient,"
and "[p]ersistence and pace was . . . within normal limits."
(Id.)

Based upon this evidence, the ALJ determined that
Claimant did not meet or equal one of Listing 11.00's
specifically-enumerated neurological impairments nor "a
combination of limitations in physical and mental functioning."
The court finds that the evidence contained in the ALJ's
decision supports his conclusion. Claimant's neurological
examinations were consistently normal. In addition, despite
Claimant's mental health diagnoses, she received medications
that appeared to remedy her symptoms, and her social functioning
and persistence and pace were normal and her concentration only

mildly deficient. Thus, the ALJ's decision provides sufficient explanation and evidence to support his determination.

IV. Conclusion

Based upon the ALJ's thorough development of the record, the court finds that the ALJ's decision supports his determination that Claimant does not meet or equal any of the referenced listings. Indeed, the ALJ's summary of the evidence decisively supports his step three conclusion and lead to his finding that Claimant could perform a range of medium work. There is simply no medical evidence here – let alone "ample evidence," Ezzell, 688 F. App'x at 200 - evincing an inability by Claimant to perform any gainful activity due to any medical condition, whether it be a musculoskeletal condition under Listing 1.00, a cardiovascular condition under Listing 4.00, or a neurological condition under Listing 11.00, including fibromyalgia which may be evaluated under multiple listings. The same is true of the digestive system and the endocrine system under Listings 5.00 and 9.00 that are of little prominence here.

At bottom, a positive finding at step three means that a claimant's symptoms "preclude [the claimant] from doing any gainful activity." Brown, 873 F.3d at 254. Consequently, this

case readily falls outside that contemplated by Radford, wherein "the depth and ambivalence of the medical record" required a more rigorous step three analysis. 734 F.3d at 296. The court finds that substantial evidence supports the ALJ's determination that Claimant is not disabled, and the court does not adopt the magistrate judge's recommendations.

Accordingly, having received the PF&R, the Commissioner's objections, and Claimant's response, and having reviewed the record de novo, it is ODERED that:

1. The Commissioner's request for judgment on the pleadings be, and hereby is, granted;

2. Claimant's request for judgment on the pleadings be, and hereby is, denied;

3. The decision of the ALJ be, and hereby is, affirmed; and

4. This action be, and hereby is, dismissed and stricken from the docket of the court.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record, to any unrepresented parties, and to the magistrate judge.

ENTER: March 14, 2018

John T. Copenhaver, Jr.
United States District Judge